UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHERRY LYNN PENNOCK,

                        Plaintiff,

v.                                            7:14-CV-1524
                                              (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

APPEARANCES:                                  OF COUNSEL:

CONBOY, MCKAY, BACHMAN,                        LAWRENCE D. HASSLER, ESQ.
& KENDALL, LLP
 Counsel for Plaintiff
407 Sherman St.
Watertown,  NY 13601

U.S. SOCIAL SECURITY ADMIN.                    DANIEL R. JANES, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

        This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 15.)  This case has proceeded in accordance with General

Order 18.

        Currently before the Court, in this Social Security action filed by Sherry Lynn

Pennock ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 12, 14.)  For the reasons set forth

below, it is recommended that Plaintiff's motion be denied and Defendant's motion be

granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on November 14, 1957.  (T. 133.)  She received a GED.  (T.

164.)  Generally, Plaintiff's alleged disability consists of neck pain, left arm pain, nerve

damage, arthritis, back injury, degenerative disc disease, and high blood pressure.  (T.

163.)  Her alleged disability onset date is August 1, 2011. (T. 67.) Her date last insured

is December 31, 2016.  (T. 16.)[1]  She previously worked as a store clerk, bus driver,

and licensed practical nurse ("LPN").  (T. 185.)

### B.    Procedural History

On January 9, 2012, Plaintiff applied for a period of Disability Insurance Benefits

("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the

Social Security Act.  (T. 159.)  Plaintiff's applications were initially denied, after which

she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On

March 12, 2013, Plaintiff appeared before the ALJ, John P. Ramos.  (T. 27-60.)  On

April 15, 2013, ALJ Ramos issued a written decision finding Plaintiff not disabled under

the Social Security Act.  (T. 10-26.)  On November 25, 2014, the Appeals Council ("AC")

denied Plaintiff's request for review, rendering the ALJ's decision the final decision of

the Commissioner.  (T. 1-5.)  Thereafter, Plaintiff timely sought judicial review in this

Court.

---

[1]      Elsewhere in the record Plaintiff's date last insured is listed as December 31, 2015.  (T. 69.)
Plaintiff's date last insured of December 31, 2016, as determined by the ALJ, is not contested.

## C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 16-26.)  First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2016 and Plaintiff had not engaged in substantial gainful activity since August 1, 2011.  (T. 16.)  Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the cervical spine with cervical radiculopathy, degenerative disc disease of the lumbar and thoracic spine, and bilateral shoulder degenerative disc disease.  (*Id.*)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 17-18.)  Fourth, the ALJ found since August 1, 2011, Plaintiff had the residual functional capacity ("RFC") to perform: light work and was able to frequently climb, balance, stoop, kneel, crouch, and crawl, and was able to frequently reach overhead with both upper extremities.  (T. 18.)[2] Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, prior to November 13, 2012, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 20-21.)  The ALJ determined that beginning November 13, 2012, Plaintiff's age category changed and Plaintiff became disabled on that date.  (T. 22.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

---

[2]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. §§ 404.1567(b), 416.967(b).

Plaintiff makes three separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to properly evaluate Plaintiff's credibility. (Dkt. No. 12 at 10-12 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ's RFC determination was not supported by substantial evidence. (*Id.* at 12-14.) Third, and lastly, Plaintiff argues the ALJ erroneously determined Plaintiff's onset date. (*Id.* at 14-15.)

## B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues substantial evidence supported the ALJ's determination, including his evaluations of medical opinions in the record. (Dkt. No. 14 at 6-9 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 9-12.) Third, and lastly, Defendant argues the ALJ properly concluded that no borderline age situation existed. (*Id.* at 12-13.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be

deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier*

*v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms; however, Plaintiff's

statements concerning the intensity, persistence, and limiting effects of those symptoms were not fully credible. (T. 19.) In making his credibility determination the ALJ properly identified and outlined the two-step process, the ALJ also provided an accurate synopsis of Plaintiff's testimony. (T. 18-19.) The ALJ then relied on objective medical evidence in the record, medical treatment Plaintiff received, Plaintiff's work history, and Plaintiff's activities of daily living in making a credibility determination. (T. 19.)

At the outset of Plaintiff's credibility argument, she properly states that the ALJ must determine whether Plaintiff suffered from a medically determinable impairment that could reasonably be expected to produced her symptoms; however, Plaintiff appears to disregard the second step of the analysis. (Dkt. No. 12 at 10 [Pl.'s Mem. of Law].) Plaintiff appears to argue that objective medical evidence supported Plaintiff's symptoms and therefore her subjective complaints are entitled to "great weight;" however, Plaintiff argument appears to overlook the second step of the credibility determination in which the ALJ evaluates the effects of Plaintiff's symptoms. ALJs must undertake a two-step process in evaluating the credibility of a plaintiff. Although objective medical evidence may support a conclusion that plaintiff's impairment could reasonably be expected to cause plaintiff's symptoms, the analysis cannot stop there. ALJs are then required to assess whether the intensity, persistence, and limiting effects of those symptoms are supported by evidence in the record.

Plaintiff states that the ALJ's determination at the first step of the credibility analysis, that her medically determinable impairments could reasonably be expected to cause her symptoms, was inconsistent with his determination at the second step, that her statements concerning the intensity, persistence, and limiting effects were not fully

credible. (Dkt. No. 12 at 10 [Pl.'s Mem. of Law].) These statements were not inconsistent or made in error as Plaintiff alleges. (*Id.* at 10.) These statements were made in accordance with the ALJ's Regulatory duty to assess Plaintiff credibility under the two-step process.

Plaintiff concludes "so long as the medical evidence could support Plaintiff's asserted symptoms, the symptoms are credible unless an analysis of the aforesaid symptom-related factors provides an adequate basis for a different conclusion." (Dkt. No. 12 at 11 [Pl.'s Mem. of Law].) In support of her argument Plaintiff relies on 20 C.F.R. §§404.1529(a), 416.929(a); however, in quoting the Regulations Plaintiff omitted a vital portion. (*Id.* at 11.) Plaintiff states that under the Regulations Plaintiff's testimony regarding symptoms is credible if "a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all other evidence . . . would lead to a conclusion that you are disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a). Plaintiff omitted the portion of the Regulation defining "all other evidence" as "including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings." *Id.* at §§ 404.1529(a), 416.929(a). The second step of the credibility analysis becomes clear when the portion of the Regulation highlighted by Plaintiff is read together with the subsequent sentence in the Regulation: "[w]e will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work." *Id.* at §§ 404.1529(a), 416.929(a).

Plaintiff appears to ignore the vital second step of the credibility analysis in which the ALJ must evaluate the limiting effects of Plaintiff's symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c). In the second part of his credibility analysis, an ALJ relies on factors besides objective medical evidence, as is required under the Regulations. *See Id.* at §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). Further, Plaintiff refers to "aforesaid symptom-related factors," however, the only "aforesaid" factors listed by Plaintiff in her argument are objective medical evidence findings. (Dkt. No. 12 at 11 [Pl.'s Mem. of Law].)[3] Therefore, the ALJ's conclusion that objective medical evidence supported Plaintiff's alleged symptoms was not inconsistent with his conclusion that Plaintiff's statements were not fully credible, because the ALJ properly adhered to the two-step analysis per the Regulations.

Plaintiff then argues that the ALJ erred in his credibility determination because he took into consideration Plaintiff's conservative treatment and failed to recognize that she did not proceed with surgery due to lack of insurance. (Dkt. No. 12 at 11 [Pl.'s Mem. of Law].) In making a credibility determination the ALJ may take into consideration "treatment received to relieve symptoms." 20 C.F.R. §§ 404.1529(c)(3)(vi), 416.929(c)(3)(vi). Contrary to Plaintiff's assertion, the ALJ's decision expressly acknowledged that Plaintiff "did not proceed with surgery due to a lack of health insurance." (T. 19.) Therefore, the ALJ did not err in relying on Plaintiff's course of treatment in assessing her credibility; and further, the ALJ did take into consideration Plaintiff's lack of insurance.

---

[3] To be sure, Plaintiff cites to 20 C.F.R. 404.1529(c)(3), which provides the factors relevant to symptoms; however, there is no indication from Plaintiff's brief that she was aware of those factors.

Plaintiff argues the ALJ erred in relying on Plaintiff's activities of daily living in making his credibility determination. (Dkt. No. 12 at 12 [Pl.'s Mem. of Law].) An ALJ is entitled to take a plaintiff's activities of daily living into account in making a credibility determination. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). Further, "[t]he issue is not whether [plaintiff's] limited ability to undertake normal daily activities demonstrates her ability to work. Rather, the issue is whether the ALJ properly discounted [plaintiff's] testimony regarding her symptoms to the extent that it is inconsistent with other evidence." *Morris v. Comm'r of Soc. Sec.,* No. 5:12-CV-1795, 2014 WL 1451996, at *8 (N.D.N.Y. Apr. 14, 2014). Here, the ALJ discussed Plaintiff's activities of daily living in his analysis at step two and also in his credibility analysis. (T. 18, 19.) The ALJ's decision indicated that he took her activities into account as part of his overall credibility analysis and ultimately determined that Plaintiff's testimony regarding the limiting effects of her pain where not credible, in part, due to her reported activities of daily living.

Therefore, for the reasons stated herein, the ALJ did not err in his credibility determination. The ALJ properly conducted the two-step process in accordance with the Regulations and further, the ALJ did not err in his analysis of Plaintiff's overall medical treatment or activities of daily living as part of his credibility determination.

### B.    The ALJ's Evaluation of Medical Evidence in the Record

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

In his evaluation of the medical opinion evidence in the record, the ALJ afforded "significant weight" to the medical opinions of consultative examiner, Elke Lorensen, M.D. and the non-examining State agency medical examiner, Seung Park, M.D.

Dr. Lorensen examined Plaintiff on March 22, 2012 and completed a medical source statement. (T. 311-316.) Dr. Lorensen observed that Plaintiff was in no acute distress, had a normal gait, could walk on heels and toes, and could squat. (T. 313.) Dr. Lorensen observed that Plaintiff's cervical spine had decreased range of motion. (T. 314.) Dr. Lorensen observed that Plaintiff's lumbar spine had decreased range of motion. (*Id.*) Dr. Lorensen observed that Plaintiff had full range of motion in her upper extremities and in her hips, knees, and ankles. (*Id.*) Dr. Lorensen opined in a medical source statement that Plaintiff had "mild restrictions" for bending and rotating her head; "moderate restrictions" for pushing, pulling, and reaching; and she should avoid dust, smoke, and other respiratory particles. (T. 315.) In an addendum dated April 6, 2012, Dr. Lorensen opined Plaintiff suffered from left arm pain and numbness; however, she was able to use both hands for fine and gross repetitive manipulations, hand strength was 5/5, and hand and finger dexterity were intact bilaterally. (T. 311.)

Dr. Park completed a case analysis on July 5, 2012. (T. 321-322.) Dr. Park did not personally examine Plaintiff, but reviewed the medical evidence in the record that was available at that time. (T. 321.) Dr. Park specifically cited to medical records pertaining to Plaintiff's motor vehicle accident in August of 2011, Dr. Lorensen's examination of Plaintiff in March 2012, and Dr. Lorensen's addendum dated April 6,

2012.  (*Id.*)  Dr. Park indicated she adopted the RFC determination made by the single

decision maker ("SDM").  (*Id.*)[4]

Plaintiff argues the ALJ's RFC determination was not supported by substantial

evidence because the ALJ improperly relied on the medical opinions of Drs. Lorensen

and Park.  (Dkt. No. 12 at 12-14 [Pl.'s Mem. of Law].)  Specifically, Plaintiff argues the

ALJ improperly relied on the medical opinion evidence supplied by Drs. Lorensen and

Park because the record did not indicate what evidence they relied on in making their

decisions, and the ALJ committed legal error in citing to the RFC determination of the

SDM.  (*Id.* at 12-14.)

It is well settled that an ALJ is entitled to rely upon the opinions of both examining

and non-examining State agency medical consultants, since such consultants are

deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§

404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and

416.927(f)(2).  An ALJ "is entitled to rely upon the opinions of both examining and non-

examining State agency medical consultants," particularly where the consultant's

opinion is supported by the weight of the evidence. *Garrison v. Comm'r of Soc. Sec.*,

No. 08-CV-1005, 2010 WL 2776978 at *4 (N.D.N.Y. June 7, 2010).

Plaintiff argues, "[p]erhaps if Dr. Lorensen or Dr. Park reviewed the objective

medical evidence [obtained after their opinions] [they] would have expressed opinions to

the effect that [Plaintiff] [cannot] perform the full range of light work."  (Dkt. No. 12 at 13

---

[4]	Single decision maker, J. Partyka, completed an initial RFC determination on April 4,
2012.  J. Partyka, opined Plaintiff could perform "light work," but could occasionally climb, stoop, and
crouch.  (T. 62-63.)

[Pl's Mem. of Law].)[5]  Although this Court cannot, and will not, speculate as to what Drs. Lorensen and Park may have concluded had they reviewed the medical record, this Court can address whether the medical opinions were complete under the Regulations and whether substantial evidence supported the ALJ's RFC determination.

First, the elements of a complete consultative examination do not require that the examiner review all, or any, medical evidence in the record.  20 C.F.R. § 404.1519n(b)-(c); *see also*, *Harper v. Comm'r of Soc. Sec.,* No. 08-CV-3803, 2010 WL 5477758, at *4 (E.D.N.Y. Dec. 30, 2010) (Commissioner was not required to provide plaintiff's current disability status to medical examiner).  Therefore, the ALJ did not commit legal error in relying on a consultative examiner's opinion where the examiner did not review the medical evidence in the record, because a consultative examiner is not required to review the record in order to provide a complete examination.

Second, Plaintiff argues Dr. Park did not indicate what evidence she relied on in making her decision.  (Dkt. No. 12 at 13 [Pl.'s Mem. of Law].)  However, as stated, Dr. Park specifically cited to medical records pertaining to Plaintiff's motor vehicle accident in August of 2011, Dr. Lorensen's examination of Plaintiff in March 2012, and Dr. Lorensen's addendum dated April 6, 2012.  (T. 321.)  Therefore, contrary to Plaintiff's assertion, Dr. Park's statement clearly indicated the medical evidence she relied on in making her decision.

Third, Plaintiff argues the ALJ erred as a matter of law because he cited to Exhibit 1A, the physical RFC assessment completed by the SDM.  (Dkt. No. 12 at 13

---

[5]        Plaintiff provides no legal support for this portion of her argument.

[Pl.'s Mem. of Law].)[6]  Contrary to Plaintiff's argument, the ALJ did not rely on the opinion of the SDM in making his determination. In his discussion of Dr. Park's opinion the ALJ cited to the exhibit containing Dr. Park's opinion and the SDM's RFC.  (T. 20.) Dr. Park's analysis stated she "agree[d] with [the] initial RFC and decision;" however, her report did not include the actual RFC determination.  (T. 321.)  Therefore, the ALJ cited the portion of the record containing the RFC determination for clarity.  Here, there is no indication that the ALJ afforded weight to the SDM.

To be sure, SDMs are "non-physician disability examiners who 'may make the initial disability determination in most cases without requiring the signature of a medical consultant.' " *Hart v. Astrue,* 32 F.Supp.3d 227, 237 (N.D.N.Y.2012).  Here, Dr. Park reviewed medical evidence in the file and concluded that the RFC determination made by the SDM was proper.  (T. 321.)  Dr. Park's opinion was essentially the opinion of the SDM; however, Dr. Park was an acceptable medical source under 20 C.F.R. §§ 404.1513(a), 416.913(a).  Therefore, Dr. Park's opinion, although originally formulated by a non-acceptable medical source, became a medical opinion once Dr. Park, an acceptable medical source, adopted it.  *See Thomas v. Comm'r of Soc. Sec.*, No. 14-CV-1364, 2015 WL 8274356, at *5 (N.D.N.Y. Nov. 17, 2015) *report and recommendation adopted*, 14-CV-1364, 2015 WL 8347185 (N.D.N.Y. Dec. 8, 2015). Further, even if the ALJ assigned weight to the SDM any error was harmless, because the ALJ would have reached the same conclusion.

Third, the ALJ's determination was supported by substantial evidence.  If supported by substantial evidence, the ALJ's finding must be sustained "even where

---

[6]        "Single decision makers" are non-physician disability examiners who "may make the initial disability determination in most cases without requiring the signature of a medical consultant." 71 FR 45890–01.

substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado v. Sullivan,* 805 F.Supp. 147, 153 (S.D.N.Y.1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [ALJ], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.,* 733 F.2d 1037, 1041 (2d Cir.1984).

Plaintiff received orthopedic care for her neck, arm, and back pain from providers at North Country Orthopaedic Group, P.C.  As summarized below, the providers recommended conservative care initially and then suggested surgery to alleviate symptoms.  The physical examinations conducted by the physicians were generally in line with the observations of Dr. Lorensen.  In addition, none of the treating physicians opinioned as to actual work related functional limitations.

On August 4, 2011, Plaintiff presented to Samaritan Medical Center with complaints of left shoulder pain.  (T. 236.)  Medical imaging indicated degenerative disc disease at C6-C7, with mild foraminal encroachment, that had progressed since December of 2004.  (T. 237.)  Plaintiff presented to North Country Orthopaedic Group, P.C. for follow up care.  On August 10, 2011, Plaintiff complained of neck pain that radiated to her fingers.  (*Id.*)  Howard Huang, M.D., noted tenderness on palpitation of the cervical spine, decreased range of motion in the cervical spine, decreased range of motion in lumbar spine, and normal range of motion in lower and upper extremities.  (T. 245.)  Plaintiff had normal stability in her cervical spine and upper and lower extremities. (T. 246.)  Dr. Huang suggested conservative care.  (*Id.*)

On August 17, 2011, Plaintiff reported neck pain that radiated to her fingers. (T. 247.) Dr. Huang examined Plaintiff and noted she was in no acute distress and had some muscle weakness. (*Id.*) Dr. Huang reviewed MRI results and found disc bulge at C5-6 with "some left slightly worse than right" C6 foraminal narrowing; disc bulge and/or osteophyte complex at C6-7 causing right greater than left foraminal narrowing; and, disc bulge at C7-T1 possibly with minimal right C8 foraminal narrowing. (*Id.*) Dr. Huang prescribed conservative care, namely physical therapy. (*Id.*)

On September 10, 2011, Plaintiff received treatment from Peter Van Eenenaam, M.D. (T. 249.) Dr. Van Eenenaam noted Plaintiff was taking ibuprofen and muscle relaxers for pain management and was still working as a bus driver. (*Id.*) Dr. Van Eenenaam noted Plaintiff had no atrophy, but did have reduced range of motion in her left arm. (*Id.*) He noted sensory testing was unremarkable. (*Id.*) He noted tenderness from her neck to forearm. (*Id.*) He noted that X-rays were unremarkable. (T. 250.) Dr. Van Eenenaam ordered an MR scan and EMG/nerve conduction study. (*Id.*)[7]

 On September 22, 2011, Dr. Van Eenenaam noted the MRI showed advanced tendonitis and the EMG indicated "fairly severe" C6 subacute left radiculopathy and "moderate" left C7 radiculopathy. (T. 251.) Dr. Van Eenenaam noted Plaintiff may need to see a spinal surgeon and referred her to Bruce Baird, M.D.. (*Id.*)

On September 27, 2011, Plaintiff met with Dr. Baird. Dr. Baird reviewed her medical imaging and performed a physical exam. (T. 252.) Dr. Baird noted neck pain when turning her head, but that she did not seem restrictive in movement. (*Id.*) He noted discomfort with overhead movement. (*Id.*) Dr. Baird noted weakness in her left upper extremity. (*Id.*) Dr. Baird noted her sensory was intact. (*Id.*) Dr. Baird noted

---

[7] Plaintiff underwent an EMG study on September 15, 2011. (T. 266-269.)

"significant weakness" in Plaintiff's left upper extremity and left upper extremity radiculopathy. (T. 253.) Dr. Baird recommended a CT scan and to continue with physical therapy. (*Id.*)

On October 18, 2011, Dr. Van Eenenaam reviewed Plaintiff's CT scan and noted a "big foraminal spur" at C5-6, C4-5 facet degenerative change, C6-7 "some" degenerative changes, and an "impressive anterior osteophyte" at C6-7. (T. 255.) Dr. Van Eenenaam discussed surgery with Plaintiff, but indicated surgery would provide incomplete relief. (*Id.*) Plaintiff followed up with Dr. Baird on November 28, 2011, and indicated her symptoms were getting "a little bit better" and her arm was feeling stronger. (T. 256.) Plaintiff indicated she wanted to continue therapy and hold off on surgery. (*Id.*)

On November 22, 2011, Plaintiff met with Edward Choung, D.O., due to her motor vehicle accident on November 19, 2011. (T. 259.) Plaintiff complained of right shoulder pain, thoracic back pain, and lumbar back pain. (*Id.*) Plaintiff indicated she was able to weight bear and walk, but complained of muscular strains. (*Id.*) Dr. Choung observed decrease range of motion in her neck, tenderness on palpitation in her thoracic spine and limited mobility secondary to pain. (*Id.*) Dr. Choung noted Plaintiff's sensation was intact, she had normal reflexes and negative Hoffmann's sign and negative clonus. (*Id.*) Dr. Choung reviewed Plaintiff's X-rays and opined Plaintiff had generalized muscular paraspinal sprain about her cervical, thoracic, and lumbar spine secondary to a rear ending motor vehicle. (T. 260.) Dr. Choung recommended Plaintiff continue with physical therapy. (*Id.*)

On December 27, 2011, Plaintiff met with Dr. Choung. (T. 261.) Dr. Choung noted no tenderness to palpation about her lower thoracic or upper lumber spine. (*Id.*) He noted her motor and sensory was intact. (*Id.*) Dr. Choung noted tenderness to palpation around Plaintiff's shoulder and reduced range of motion secondary to pain. (*Id.*) Dr. Choung recommended physical therapy and an MRI of her thoracic and lumbar spine. (*Id.*)

On January 17, 2012, Plaintiff met with Dr. Choung to review her MRI results. (T. 262.) Dr. Choung assessed left upper and lower back pain with radiculopathy. (*Id.*) Dr. Choung referred Plaintiff to Howard Huang, M.D. for evaluation for epidural steroid injections. (*Id.*)

On January 24, 2012, Plaintiff met with Dr. Choung, to follow up on her cervical spine pain. (T. 257.) Plaintiff complained she did not feel better, that her right shoulder was now bothering her, and complained she could not lift her arm. (*Id.*) Dr. Choung recommended that Plaintiff wait six to eight weeks to see how she did in terms of her right shoulder and low back. (*Id.*) Dr. Choung recommended Plaintiff consider a foraminotomy at C5-6. (T. 258.)

On January 31, 2012, Plaintiff met with Dr. Huang to discuss steroid injections. (T. 263.) Dr. Huang noted tenderness on palpation of the thoracic and lumbar spine, but in a "patchy fashion." (T. 264.) Dr. Huang noted pain on range of motion in Plaintiff's back. (*Id.*) Dr. Huang reviewed Plaintiff's MRI and X-ray results. (*Id.*) Dr. Huang recommended spinal injections. (T. 265.)

On February 16, 2012, Plaintiff treated with Dr. Baird. (T. 336.) She indicated she wanted to return to work. (*Id.*) Dr. Baird recommended an MRI of the cervical

spine, discussed surgical options, and concluded that in terms of work Plaintiff was not myelopathic and released her to work. (*Id.*) On February 24, 2012, Plaintiff met with Dr. Choung who noted Plaintiff cancelled her surgery because she had concerns about risks and wished to proceed with injections. (*Id.*) Plaintiff also indicated she felt better after stopping physical therapy. (*Id.*) Dr. Choung observed Plaintiff had full motor strength in her upper and lower extremities, intact sensation, and negative Hoffman's sign and negative clonus. (*Id.*)

On March 5, 2012, Plaintiff met with Dr. Huang. (T. 338.) Plaintiff indicated that she stopped working because she could not sit for long periods of time. (*Id.*) Dr. Huang recommended steroid injections. (T. 339.) On March 21, 2012, Plaintiff met with Dr. Baird regarding her left arm radiculopathy and neck pain. (T. 340.) Dr. Baird reviewed medical imaging and noted Plaintiff took an "occasional" Tylenol with codeine for discomfort, usually once a day. (T. 340.) Dr. Baird recommended anterior cervical decompression and fusion at C5-6 and C6-7. (*Id.*)

On April 23, 2012, Plaintiff met with Dr. Huang for steroid injections. (T. 342-343.) On May 11, 2012, Plaintiff stated that she felt the "same" after the injections; however, the "burning" sensation had decreased some. (T. 344.) On physical examination, Plaintiff had pain with straight leg raises, decent range of motion in her lower extremities, and could do some single-limb heel rise bilaterally. (*Id.*) Dr. Huang noted Plaintiff wished to try injections in her mid-back. (T. 345.)

On June 11, 2012, Plaintiff met with Dr. Baird who noted she did not have apprehension with neck motions, but did have an element of discomfort with extremes of motion. (T. 346.) Dr. Baird and Plaintiff discussed surgical options. (*Id.*)

On July 18, 2012, Plaintiff met with Dr. Choung who observed full motor strength in her lower extremities, no sensory deficits, no long tract signs, negative clonus, downgoing toes with Babinksi, and normal deep tendon reflexes.  (T. 347.)  Dr. Choung noted Plaintiff received minimal relief with conservative treatment and referred her to Dr. Baird for management of her upper and lower back issues.  (*Id.*)

On August 22, 2012, Plaintiff met with Dr. Baird who noted palpation of her back was not painful, Plaintiff was able to sit, and Plaintiff was able to stand.  (T. 348.)  Dr. Baird noted Plaintiff changed positions frequently because of discomfort.  (*Id.*)  Dr. Baird recommended that Plaintiff see Dr. Huang.  (*Id.*)  On August 31, 2012, Plaintiff met with Dr. Huang who conducted a physical exam and recommended an MRI of the right shoulder, electrodiagnostic testing, and spine surgery.  (T. 350.)

On September 27, 2012, Dr. Huang noted Plaintiff had painful range of motion in her right shoulder, pain on straight leg raise, decent range of motion in knees and ankles, and Plaintiff could single limb heel rise.  (T. 351.)  Dr. Huang recommended checking Plaintiff's rheumatoid factor for her shoulder pain.  (T. 352.)  Plaintiff wished to proceed with steroid injections in her back, because it helped the pain "a little bit, [and] it helped all the burning [she] had in [her] back."  (*Id.*)  Plaintiff continued to treat with the providers at North Country Orthopaedic Group; however, the ALJ found Plaintiff disabled after November 13, 2012.

The ALJ properly relied on the medical opinion evidence of Drs. Lorensen and Park.  The providers at North Country Orthopaedic did not assess specific functional limitations, physical examinations conducted by Plaintiff's physicians were generally consistent with the physical examination conducted by Dr. Lorensen, and although

surgery was recommended, the majority of Plaintiff's care was conservative in nature. Therefore, for the reasons stated herein, the ALJ's RFC determination was supported by substantial evidence.

## C. "Borderline Age"

The Medical-Vocational Guidelines, commonly called "the Grids," divide plaintiffs into specific categories according to their age, transferability of skills, and RFC. *See* 20 C.F.R. Part 404, Subpt. P, App. 2. The Regulations provide for three distinct age categories: (1) "younger person" is an individual between the ages 18 and 49; (2) "person closely approaching advanced age" is an individual between the ages 50 and 54; and, (3) "person of advanced age" is an individual 55 and over. 20 C.F.R. §§ 404.1563(c)-(e); 416.963(c)-(e). The Grids direct a finding of disability when a plaintiff is of advanced age, can only perform light work, has a high school diploma, and previous work experience was skilled or semiskilled. *See* 20 C.F.R. Part 404, Subpt. P, App. 2 at § 202.06.

The Regulations direct that the age category that applies to a plaintiff during the period for which she claims disability should be used to determine whether or not the plaintiff is disabled. 20 C.F.R. §§ 404.1563(b); 416.963(b). The Regulations make clear, however, that the age categories are not to be applied "mechanically in a borderline situation." *Id.* Thus, if a plaintiff is within a few days or months of obtaining an older age category, "and using the older age category would result in a determination or decision that [the plaintiff] [is] disabled, [the ALJ] [should] consider whether to use the older age category after evaluating the overall impact of all the factors of [the plaintiff's] case." *Id.*

At step five of his determination, the ALJ concluded that prior to November 13, 2012, Plaintiff was not disabled because based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T. 21.) In making his decision, the ALJ relied on the Grids. 20 C.F.R. Part 404, Subpt. P, App. 2 at § 202.14. The ALJ determined Plaintiff was disabled beginning on November 13, 2012, because on that date Plaintiff's age category changed from "closely approaching advanced age" to "advanced age." 20 C.F.R. §§ 404.1563(d)-(e); 416.963(d)-(e). Therefore, under the Grids, a finding of disabled was warranted. 20 C.F.R. Part 404, Subpt. P, App. 2 at § 202.06.

Plaintiff argues that under the Regulations, Plaintiff falls into a "borderline age" situation and therefore was entitled to a finding of disability as of her alleged onset date, August 1, 2011. (Dkt. No. 12 at 14-15 [Pl.'s Mem. of Law].) Under the Regulations, "age categories [are not] mechanically in a borderline situation. If [plaintiff is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [plaintiff is] disabled, [the ALJ] will consider whether to use the older age category after evaluating the overall impact of all the factors of [plaintiff's] case." 20 C.F.R. §§ 404.1563(b), 416.963(b).

Plaintiff's argument fails because she was not in a "borderline age" situation. On August 1, 2011, Plaintiff was 53 years old, over a year away from turning 55 years-old, when she'd be categorized as "advanced age."

Although the "regulations do not clearly define the outer limits of a borderline situation," among the district courts in the Second Circuit, three months appears to delineate the outer limits of "a few months." *Smolinski v. Astrue,* 2008 WL 4287819, *4

(W.D.N.Y. 2008); *Davis v. Shalala,* 883 F.Supp. 828, 838 (E.D.N.Y.1995) (three months

borderline); *Hill v. Sullivan,* 769 F.Supp. 467, 471 (W.D.N.Y.1991) (three months

borderline); *see also Gravel v. Barnhart,* 360 F.Supp.2d 442, 446 n. 8 (N.D.N.Y. 2005)

(eleven months not borderline); *Hunt v. Comm'nr of Social Security,* No. 00-CV-706,

2004 WL 1557222, at *5 n. 14 (N.D.N.Y.2004) (eight months not borderline); *but see*

*Metaxotos v. Barnhart*, No. 04-CV-3006, 2005 WL 2899851, at *8 (S.D.N.Y. Nov. 3,

2005) (six months, 14 days borderline).  Plaintiff's argument fails because she was over

a year from her change of age category as of her alleged onset date, well outside the

parameters of a "borderline age" situation.  Consequently, this Court finds no error in

the ALJ's decision in this regard.

ACCORDINGLY, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the

Plaintiff's complaint **DISMISSED**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have

**FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.

Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO**

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ.

P. 6(a), 6(e), 72.

Dated:          February 23, 2016

William B. Mitchell Carter
U.S. Magistrate Judge